ANTHONY L HESTER
3700 SE SALERNO ROAD
STUART, FL 34997
772-419-5055 OFFICE 772-872-3400 FAX
TTHESTER1@MSN.COM

FILED by _CQ_ D.C.

JAN 21 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT
S.D. of FLA. - W.P.B.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF FLORIDA

# WEST PALM BEACH DIVISION

**ANTHONY L HESTER,**

    **Plaintiff,**

vs.

**OCWEN LOAN SERVICING, LLC,**

    **Defendant**

**Case No.:** 16cv80106 Middlebrooks/Brannon

**INITIAL COMPLAINT**

NOW COMES, Plaintiff, Anthony L Hester, In Pro Se, with his initial action and complaint against Defendant, Ocwen Loan Servicing, LLC, and would respectfully show unto this Honorable Court, the following to wit;

**PARTIES**

1. Plaintiff, Anthony L Hester, a resident of Martin County Florida, whose address for the purpose of this action is 3700 SE Salerno Road, Stuart, Florida 34997, and can be served and accept correspondence at this address.

2. Defendant, Ocwen Loan Servicing, LLC, a Florida Limited Liability Company/Corporation, and has a Principal Address located in West Palm Beach, Florida. Defendant can be serviced process by and through their Registered Agent, Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 33201-2525.

INITIAL COMPLAINT - 1

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C 1331, 1367, 12 U.S.C. 5565 and 28 U.S.C. 1391(b)(1), and 12 U.S.C. 5564(a-f).

## FACTS PRECEEDING SUIT

Around or about April 2006, Plaintiff purchased an investment property located at 118 Summer Drive, Vicksburg, MS 39180. Plaintiff applied for a mortgage with then IndyMac Bank, and was approved and granted an ARM mortgage serviced by IndyMac Bank.

About 2 years later, the Treasury seized IndyMac Bank, and IndyMac Bank became IndyMac FSB. About 2 years later, One West Bank purchased the assets of IndyMac Bank and began servicing the mortgage.

During the time that both, IndyMac Bank, and IndyMac FSB, Plaintiff paid additional funds each month toward the Principal balance of the mortgage. Plaintiff was attempting to make the payoff earlier than the 30-year mortgage that was approved and granted. At no point during these additional payments, either servicer had any problems with applying the additional payments to the Principal.

Upon One West Bank obtaining the servicing, Plaintiff never changed nor stopped making the additional payments toward the Principal. One West Bank also properly applied the additional payments to the Principal.

In September 2013, Plaintiff was notified that the Servicing of his mortgage would be changed to Ocwen Loan Servicing, LLC, effective October 2013. Plaintiff contacted Ocwen prior to the effective date to speak about his ACH payments for the mortgage and the additional payments to apply towards the Principal. Ocwen's representative could not assist because the account had not been input into their system. My payments were continued to be deducted from my bank account electronically. I contacted One West Bank and the Third Party Company that conducted the ACH debits from my bank account and informed them regarding Ocwen and to please ensure that my payments went to Ocwen.

Around November 17, 2013, Plaintiff contacted Ocwen and obtained the Mortgage Account number.

INITIAL COMPLAINT - 2

Plaintiff immediately accessed Ocwen's Account Holder portal on their web-site and registered. Plaintiff set up his automatic Debit (ACH) payments of $400.00 each month to be applied towards the Principal Balance until the loan was paid in full. Ocwen sent an acknowledgement as shown on Exhibit 1, attached hereto.

On November 19, 2013, Ocwen sent a secondary letter confirming the ACH debits directly beginning January 1, 2014, for the 2nd payments of $400.62. This payment was to apply for the Monthly due and escrow, and the remainder to be applied to the Principal. (See Exhibit 2).

Around January 2014, Plaintiff received his monthly statement from Ocwen, and the statement showed that Ocwen applied the Principal payments to future months. Plaintiff contacted Ocwen and demanded that this be corrected, and was assured that all future monthly payments would be applied properly. In February 2014, March 2014, April 2014, May 2014 and June 2014, all the payments were misapplied. Plaintiff contacted Ocwen's Ombudsman's Office and demanded that the payments be applied properly, and not continue to allow this to happen.

In July 2014, the payments again were not applied properly, and Plaintiff sent an email to William Erby. Plaintiff asked that Mr. Erby get involved and have this resolved, and if not, Plaintiff would file action in State Court.

Mr. Erby's email was answered by In-House Counsel, Carol Fantozzi, whom stated in her email that she would get with Senior Management and have this resolved. Plaintiff was willing to allow Ocwen to do all it could to resolve the matter.

About 2 days later, Ocwen's Renee Hensley, Senior Manager from the Office of the Ombudsman, contacted Plaintiff and assured that this issue would not happen again.

In August 2014, September 2014, October 2014, Plaintiff contacted Ms. Hensley each of these months because the payments again were not properly applied. Ms. Hensley became upset that Plaintiff contacted her, and said she would look into it and get back with Plaintiff. That never happened.

Plaintiff then filed a complaint with the Florida Division of Consumer Affairs. The complaint was sent to the Florida Division of Financial Regulations.

Ocwen was sent a copy of the complaint, and responded that the payments had been adjusted and applied to the principal as requested by Plaintiff. The Division of Financial Regulation closed the case.

INITIAL COMPLAINT - 3

Around October 2014, again Ocwen failed to apply the additional Principal payment to the account. Same thing in November 2014, and December 2014, and January 2015, Ocwen failed to properly apply the payments. At that point, Plaintiff contacted Carol Fantozzi and registered his complaint. Ms. Fantozzi responded that Ocwen has hired Attorney Kelly Herzik to review Plaintiff's account and attempt to resolve it. Attorney Herzik never contacted Plaintff. Plaintiff contacted Attorney Herzik and asked how long would it take Ocwen to properly apply payments. Ms. Herzik was nasty, rude, and was not willing to help resolve the issue. Plaintiff received no additional communications from Attorney Herzik.

Payments for March 2015, April 2015, May, 2015, June 2015 and July 2015, again were not properly applied. Plaintiff then filed a complaint with the Federal Consumer Financial Protection Bureau. The complaint was given Case #150713-002211, and the CFPB sent the complaint to Ocwen for a response.

In the response sent by Ocwen, it was stated that,,,,,Plaintiff's payments were not applied because the checks were not received until the 14th day of the month.,,,,,,, Plaintiff responded to the CFPB that Plaintiff do not send checks. All payments are ACH direct debit and Ocwen is untruthful. CFPB stated that since this information was presented, an investigation will be undertaken. Plaintiff have no knowledge to this date where the investigation stands, except to say that the CFPB did let Plaintiff know that Plaintiff could sue for relief.

The payments for the remainder of 2015 and January 2016, were all not applied properly. Plaintiff contacted Ocwen's Carol Fantozzi, and stated that this need to be resolved within 5 days or suit would be filed against Ocwen for violations of the Dodd-Frank Wall Street & Consumer Protection Act (Title X).

Ms. Fantozzi responded that Ocwen has Hired Attorney Patrick Broderick to look into the case and attempt to resolve the issues. Plaintiff spoke with Attorney Broderick and gave the brief history and asked that Ocwen settle the matter of face civil action in Federal Court.

Attorney Broderick stated that Ocwen would offer Plaintiff $6000.00 plus $2000.00 for Plaintiff's time, and apply this toward the principal mortgage. The attorney did not address the future payments, so Plaintiff replied that the settle offer would be accepted if Ocwen stipulates their solutions for the future payments and how they would be applied and that the $8000.00 be sent to Plaintiff and not applied to the account. At this stage in the game,

INITIAL COMPLAINT - 4

Ocwen cannot be believed nor trusted and Plaintiff would feel more secure if Plaintiff managed his own payments rather than Ocwen promise something that could backfire on Plaintiff and possible cause him to lose his property.

Since that email was sent, Attorney Broderick, Carol Fantozzi nor anyone from Ocwen has contacted Plaintiff. Plaintiff made attempts to contact each and did speak with Renee Hensley. Ms. Hensley was rude again and offered no solution as to who, when, what, where and how were the past payments would be corrected, and where did the money go. The additional money paid is not reflecting on the account, and Ocwen have not answered Plaintiff's request for the accounting of the money paid. This is all in violation of the CFPB riles as set January 17, 2013 and approved by Congress and a part of the Dodd-Frank Act and as published in the Federal Register. This is also a violation of the FDCPA (15 U.S.C. 1601, and Florida Statute 559*543(1)(2)(4), and pursuant to F.S. 559.552, and F.S.559.72.

## COMPLAINT

Plaintiff's complaint, as related to the aforementioned facts, entitled him to relief pursuant to the Dodd-Frank Act, and the Rules of the CFPB. Plaintiff has made every effort to try and get Ocwen to properly apply the payments to his account. Ocwen has failed and refused to give a complete accountability of Plaintiff's payments. Ocwen has taken upon themselves, without authority, to apply Plaintiff's funds to wherever Ocwen chooses.

Plaintiff has not given Owcen, nor anyone else, the right to apply the funds where they chose. Plaintiff have spent almost each and every month contacting Ocwen to properly apply his payments. Ocwen has constantly lied to the BBB, Florida Department of Financial Regulations, and the CFPB regarding Plaintiff's payments.

## RELIEF DEMAND

Plaintiff is entitled to relief based upon the violations of the CFPB and the FDCPA, and actual damages and punitive damages.

Plaintiff is seeking $45,000 in actual damages, and $300,000.00 in punitive damages. Plaintiff also seek a permanent Injunction against Ocwen regarding Plaintiff's future payments on this mortgage loan which would

INITIAL COMPLAINT - 5

allow Plaintiff future damages should Plaintiff's payments again not properly applied by Ocwen and any other and further relief that this Honorable Court deem fair and just.

Dated this 21th Day of January 2016.

*[signature]*

ANTHONY L HESTER, PRO SE
3700 SE SALERNO ROAD
STUART, FL 34997
772-419-5055 OFFICE
772-621-0748 CELL
772-872-3400 EFAX
tthester1@msn.com

INITIAL COMPLAINT - 6

○
OCWEN
WWW.OCWEN.COM

November 19, 2013

Loan Number:       7190023577

Dear Customer(s):

You have authorized Ocwen to withdraw $400.00 from your checking or savings account ending in 7381 on 11/29/2013.

Your Confirmation Number is 2013111901654675.

If you have any questions regarding the ACH program, please review the information provided at www.ocwen.com or you may contact our Customer Care Center at (800) 746-2936, Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm or Sunday 12:00 pm to 9:00 pm ET.

Sincerely,


Ocwen Loan Servicing LLC.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*To unsubscribe from this service, please log into your account and update your email preferences.*

*Exhibit 2*

OCWEN

WWW.OCWEN.COM

November 19, 2013

Loan Number:    7190023577

Dear Customer(s):

Thank you again for choosing to participate in Ocwen's Automatic Clearing House (ACH) program to have your payments automatically withdrawn from your bank account. Based upon your request and approval, we have enrolled you in this free service and your first payment withdrawal date is scheduled for 01/01/2014.

If you have any questions regarding the ACH program, please review the information provided at www.ocwen.com or you may contact our Customer Care Center at (800) 746-2936, Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm or Sunday 12:00 pm to 9:00 pm ET.

Sincerely,

Ocwen Loan Servicing LLC.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*To unsubscribe from this service, please log into your account and update your email preferences.*

NMLS # 1852